# BERTSCH *against* THE LEHIGH COAL AND NAVIGATION COMPANY.

### APPEAL.

Parol evidence may be given to explain a written agreement, so far as to give locality and identity to the subject-matter of it, and apply the contract to it.

Therefore, where in a proceeding under the acts, incorporating the Lehigh Coal and Navigation Company, to recover damages for injuries done by the company to the land of the plaintiff, the defendants pleaded in bar, a written agreement for the purchase of the plaintiff's land, through which the defendants' canal was to pass, it was *held*, that the plaintiff might give parol evidence, that, at the time the agreement was entered into, the line or route of the canal was laid out and designated by stakes, set up through the plaintiff's land; that the written agreement was made in reference to this line; that the land lying between it and the river is the same land that is described in the agreement, and that the defendants, instead of confining themselves to this line, as then staked out, in constructing and making their canal, or, at least, keeping between it and the river, extended the canal beyond the line, and further from the river into the other land of the plaintiff, and thus cut off a greater quantity of land from the main body of his farm, than was agreed on.

But parol evidence is not admissible to shew that the defendants agreed to build two locks upon that part of the canal which passed through the plaintiff's land, as a part of the consideration he was to receive for parting with it to the defendants; the written agreement containing no such provision.

The remedy given by the acts of assembly, incorporating the Lehigh Coal and Navigation Company, to the owner of land, to recover damages for injuries done by the company in constructing their works, can be resorted to only where the parties are unable to agree upon the compensation to be made to the owner of the land. Where an agreement has been entered into, the remedy is by suit on the agreement. But if the company, after such an agreement, without regard to it, go on and make their canal through land different from that which was agreed on, the owner is at liberty to rescind the contract, and proceed under the acts of assembly.

THIS was an appeal from the decision of Judge Huston, holding the Circuit Court of *Northampton* county, in *September,* 1831.

It was a proceeding under the acts of 20th *March,* 1818, entitled "An act to improve the navigation of the river *Lehigh,*" (*Pam. Laws,* 197,) and of the 13th *February,* 1822, entitled "An act to incorporate the *Lehigh* Coal and Navigation Company." (*Pam. Laws,* 21.)

The *first* section of the act first-mentioned, authorised *Josiah White, George F. A. Hauto* and *Erskine Hazard,* their heirs and assigns, to enter upon the river *Lehigh,* to open, enlarge and change its channel, &c. to make dams, locks, or any other device which they should think fit and convenient, to make a good navigation downward, &c. The *second* section provides, "that if any person or persons shall be injured, by means of any dam or dams being erected, or the land of any person inundated by swelling the water by means of any dam or dams, or any mill or other water-works injured by swelling the water into the tail-race of any mill or other water-works which may have been erected in the said river, and if the said *Josiah White, George F. A. Hauto* and *Erskine Hazard,* their heirs and assigns,

(Bertsch *v.* The Lehigh Coal and Navigation Company.)

cannot agree with the owner or owners thereof, on the compensation to be paid for such injury, the same proceedings shall be had as are provided in the *third* section of this act," &c.

The *third* section enacts, " that the said *Josiah White, George F. A. Hauto* and *Erskine Hazard*, their heirs and assigns, shall have authority and power, by themselves, or their superintendants, engineers, artists and workmen, to enter in and upon and occupy for the purpose, all land which shall be necessary and suitable for erecting a lock, sluice, canal, tow-path, or other device, doing as little damage as possible, and there to dig, construct, make and erect such lock, sluice, canal, tow-path or other device, satisfying the owner or owners thereof; but if the parties cannot agree upon the compensation to be made to such owner or owners, it shall and may be lawful for the parties to appoint six suitable and judicious persons, who shall be under oath or affirmation, and who shall reside within the proper county where the land lies; or if they cannot agree on such persons, then either of the parties may apply to the Court of Common Pleas of the proper county where the land lies, and the said court shall award a *venire*, directed to the sheriff, to summon a jury of disinterested men, in order to ascertain and report to the court, what damages, if any, have been sustained by the owner or owners of the ground, by reason of such lock, canal, sluice, tow-path or other device passing through his, her or their land; which report, being confirmed by the court, judgment shall be entered and execution shall issue, in case of non-payment, for the sum awarded, with reasonable cost, to be assessed by the court.   And it shall be the duty of the jury, or the six appraisers, as the case may be, in valuing any land, to take into consideration the advantage derived to the owner or owners of the premises from the said navigation: *Provided*, that either party may appeal to the court, within thirty days after such report may have been filed in the prothonotary's office of the proper county, in the same manner as appeals allowed in other cases," &c.

The *fourth* section provides, " that the said *Josiah White, George F. A. Hauto* and *Erskine Hazard*, their heirs and assigns, by and with their superintendants, engineers, artists, workmen and labourers, with their tools, instruments, carts, wagons and other carriages, with beasts of draught and burthen, may enter upon the lands contiguous and near to the said river, giving notice to the owners or occupiers thereof, and from thence take and carry away any stone, timber, gravel, sand, earth or other material, doing as little damage thereto as possible, and repairing any breaches they make in the enclosures thereof, and making amends for any damages that may be done thereon, and paying for the materials to be taken away, the amount whereof, if the parties do not agree, shall be assessed and valued by any three disinterested freeholders residing in the neighbourhood, under oath or affirmation, to be appointed by consent of the parties, or, if they cannot agree, by any disinterested justice of the peace of the

(Bertsch *v.* The Lehigh Coal and Navigation Company.)

proper county, allowing an appeal to the Court of Common Pleas, as in the *third* section of this act."

On the 13th of *February*, 1822, an act of assembly was passed, (*Pam. Laws,* 21,) to incorporate "The *Lehigh* Coal and Navigation Company," the preamble of which recited the act of the 20th *March*, 1818, "to improve the navigation of the river *Lehigh*," by which certain rights were vested in Messrs. *White, Hauto* and *Hazard.* It further recited, that they had conveyed to the *Lehigh* Navigation Company all the rights granted to them by that act, reserving certain residuary profits: That Messrs. *White, Hauto* and *Hazard* had purchased certain leasehold and freehold estates in sundry tracts of coal-land, situate on and near the river *Lehigh*, which, for the purpose of raising funds, they had conveyed to trustees, for the use of certain persons furnishing the funds, and associated under the name of the "*Lehigh* Coal Company," reserving certain residuary profits and exclusive rights in the management of the company : That these companies had united and amalgamated themselves into one company, under the name of " The *Lehigh* Navigation and Coal Company," confirming to Messrs. *White, Hauto* and *Hazard* the residuary profits and exclusive rights reserved by them : That *Hauto* had agreed to convey all his rights to *White* and *Hazard*, which agreement had been carried into effect, and the funds of the company being still insufficient for the objects of the association, it was agreed between the stockholders in the said company and the said *White* and *Hazard*, that the name of the company should be changed to that of " The *Lehigh* Coal and Navigation Company :" That the capital stock should be increased by the admission of new subscribers, and that, in consideration thereof, and of certain shares in the stock of the new company, to be given to them, *White* and *Hazard* should release to the company their reserved rights, and convey to trustees, for the use of the stockholders in the new company, all their right to the water-power, and come in as simple stockholders under the new association, &c. The act, therefore, in the *first* section incorporated the new company by the name of "The *Lehigh* Coal and Navigation Company," with the usual corporate powers, &c. The *second* section vested the property of the former association in the new corporation, and provided that its contracts should continue in force. The *third* section confirmed to the corporation the rights and privileges granted to Messrs. *White, Hauto* and *Hazard* by the act of 20th *March*, 1818. The *seventh* section declares, that in the appraisement of damages and valuation of materials, provided for by the *second, third, fourth, fifth*, or any other section of the above-mentioned act, if either party shall require it, the referees or persons composing the jury of valuation, shall not be taken from within seven miles of the river *Lehigh*.

The complaint of the plaintiff set forth, that the *Lehigh* Coal and Navigation Company, on the 1st *October*, A. D. 1827, and at divers other days and times, between that day and the day of the presentation of the original petition in this case, by their superintendants, en-

(Bertsch *v.* The Lehigh Coal and Navigation Company.)

gineers, artists and workmen, by virtue of the authority and power given to them by an act of the general assembly of this commonwealth, passed the 13th of *February*, 1822, entitled "An act to incorporate the *Lehigh* Coal and Navigation Company," and the several acts supplementary thereto, did enter upon and occupy the land of the said *Christian Bertsch*, being a tract of land containing one hundred and sixty acres and one hundred and forty-six perches, situate in the township of *Lehigh*, in the county of *Northampton*, and did then and there dig, construct, erect and make a certain canal, tow-path, and berm bank on the said land of the said *Christian*, extending for a distance of two hundred perches in length, and occupying thereby a large portion of the said land, that is to say, eleven acres and forty-two perches thereof, without making compensation therefor; and did then and there throw open the fences of the said *Christian* on his said land, and did, for a long space of time, that is to say, during all the time aforesaid, occupy the meadow and other lands of the said *Christian*, in the said township, by their superintendants, &c. by their carts, &c. passing and repassing the same, thereby treading down and destroying the grass and herbage there growing, and destroying the fences and hedges of the said *Christian* there standing; that is to say, two hundred perches of said fence, and did then and there further, by means of certain dams being erected, inundate the land of the said *Christian* situated as aforesaid, that is to say, five acres of arable land and five acres of meadow land, and did greatly injure the distillery of the said *Christian* by lessening the business and profits thereof, and did also greatly injure and lessen the business and profits of the wool-carding machine of the said *Christian*, and did also greatly injure the business and profits of the blacksmith's shop of the said *Christian* there, and did, by means of the said canal, berm bank and dams, divert and change the course of the streams of water issuing and running from three certain springs of water issuing on the land of the said *Christian*, in the township aforesaid, by which his meadow land and arable land, *viz.* ten acres of meadow land and ten acres of arable land were inundated with water, and destroyed, and rendered entirely useless to the said *Christian*, *to wit*, at the county aforesaid, and other wrongs to the said *Christian* then and there did, for which he has received no compensation : By means whereof he, the said *Christian*, hath sustained damage to the value of four thousand dollars.

The defendant pleaded as follows :—"And the said The *Lehigh* Coal and Navigation Company, by *J. M. Porter*, their attorney, come and defend the wrong and injury when, &c. and say, that the said *Christian* ought not to have instituted this proceeding, and ought not to have and maintain his action thereof against them, because they say, that heretofore, *to wit*, on the 3rd *August*, 1827, the said *Christian* and the said company entered into an agreement in writing, sealed with the seal of said *Christian* and of *Jonathan Fell*, President of said company, on behalf of said company ; one part of which said agree-

ment, sealed with the seal of the said *Christian,* the said company bring here into court, the date whereof is the day and year aforesaid, whereby the said *Christian* agreed to sell, and the said *Jonathan,* on behalf of the said company agreed to buy all the land belonging to the said *Bertsch* which might be occupied by the canal improvements then about to be made by the said company along the river *Lehigh,* and likewise all his (the said *Christian's*) land, which should be comprised between the said canal and the river, at the price of twenty-five dollars per acre, the said *Bertsch* to make the said company a good and legal title for the same, free from all incumbrance, and the said company to pay him at the rate aforesaid, as soon as the quantity of land should be precisely ascertained, and a sufficient deed made therefor; and it was thereby further agreed, that the said *Bertsch* should have the right of the river fishery on the premises, and also the right of using any part of the shore thereby granted, for the abutments of a bridge to be built over the river *Lehigh,* and also the right of continuing the bridge across the canal, provided the same be so built as not at any time to interfere with the navigation of the canal. And the said company further in fact say, that thereupon afterwards, and after the said canal mentioned in the said agreement, with its necessary appendages and appurtenances were completed, *to wit,* on 2nd *December,* A. D. 1829, at the county aforesaid, the said company caused all the land belonging to the said *Bertsch,* so occupied by the said canal improvements, together with all his lands comprised between the said canal and the river *Lehigh,* to be surveyed, and the quantity thereof to be precisely ascertained, and the quantity was then and there ascertained to be, and was eleven acres and forty-two perches of land, of which the said *Christian* then and there had notice; and the said company aver, that they have performed, done and kept every thing in the said agreement mentioned on their part and behalf to be done, kept and performed, and did then and there, *to wit,* on the same day and year last aforesaid, at the county aforesaid, offer to pay to the said *Christian* the sum of two hundred and eighty-one dollars, fifty-six and one-half cents, the full consideration of said lands, so as aforesaid occupied and agreed to be conveyed, and did then and there demand and require of the said *Christian* to make to the said company a good and legal title for the same, free from all incumbrance.

" And the said company further aver, that the said lands in the petition and plaint of the said *Christian* mentioned, and therein alleged to be occupied and injured by the said canal, and the said land in the said agreement and in this plea hereinbefore mentioned, are the same and not divers; and this, the said company are ready to verify. Wherefore they pray judgment if the said *Christian* ought to have instituted this proceeding, or ought to have or maintain his aforesaid action thereof against them," &c.

To this plea the plaintiff replied, " that he did not agree with the defendants for compensation for the injuries complained of in the plaint done to the lands and premises therein mentioned, in manner

and form as the defendants, in their plea, have alleged. And of this he puts himself upon the country."

The written agreement referred to in the defendants' plea, on being offered in evidence, was objected to by the plaintiff's counsel, on grounds which it is not now necessary to state. His Honour permitted the paper to be read in evidence, observing, at the same time, that its effect might depend on future proof.

*Abel Abbot,* a witness produced by the defendants, being under examination, the plaintiff's counsel put to him the following question. " Could the canal have been laid nearer the river than it is, without altering the level as it stood above and below, without injuring the company?" This question was objected to by the defendants' counsel, but the court permitted it to be answered.

In the course of the trial, the counsel for the plaintiff offered in writing to prove by *John Musselman,* the following facts :

1st. " That when the article of agreement given in evidence by the plaintiff, was signed, the route of the canal through *Christian Bertsch's* land was staked off : That it was expressly agreed between the parties that the canal should be dug on the ground staked off : That the plaintiff was unwilling to sign the agreement until it was stipulated that it should be so dug : That it was further expressly stipulated that there should be two locks built on the plaintiff's land, which would have been a benefit to the plaintiff, so as, in a small degree, to compensate him for the injury to be done him, and the situation of the locks was pointed out by Mr. *Fell* : That *Bertsch* refused to let the canal be dug further into the land than where the stakes were placed, and said he would sign the agreement on those terms : That the route of the canal was subsequently, and without the assent of *Bertsch* changed, and laid more than the width of the canal in some places further in upon the land of *Bertsch,* which was his best land : That the locks have not been built as stipulated for by Mr. *Fell,* at the time of signing the agreement, and not one is on *Bertsch's* land : By means of which alterations, much more damage has been suffered than would have been suffered had the canal been located where it was originally designed ; and that *Christian* did not then understand, and cannot read English."

The plaintiff then further offered to prove—

2d. " That in the construction of the canal, locks, &c. the defendants occupied a large portion of the farm of the plaintiff, driving through with their carts, carriages, &c. and their superintendants, agents and workmen working on the same, by which he was deprived of the use of his farm for a whole year ; destroyed a large quantity of fence of the plaintiff, on his land ; flooded the water on his meadow, by the diversion of three springs mentioned in the declaration, and by increasing the depth of the river, by the dam below the land of the plaintiff ; wholly deprived the plaintiff of the profits of his apple-distillery, wool-carding machine and smith-shop, which before that time did a large business ; and took stones from the land of the

(Bertsch *v.* The Lehigh Coal and Navigation Company.)

plaintiff, for constructing and erecting their slope-wall and locks, for which no compensation has been made."

The evidence thus offered, was objected to by the counsel for the defendants, and overruled by his Honour, who, in rejecting it, gave the following

OPINION.—If any thing is omitted in an agreement by fraud or mistake, we suffer it to be corrected. This is one thing—to vacate the agreement entirely, is a different matter. To correct an agreement is one thing, to declare it void is another. This latter seldom occurs, unless in case of misrepresentation of material matters.

The expression that the agreement cannot be partly in writing and partly by parol, requires much limitation. It is not true as to errors in reducing it to writing. When it is intended actually to make a different contract, by introducing stipulations substantially varying the written agreement, and making it a different contract, not correcting it by adding omissions, the expression is true. The written agreement is to pay for land which should be taken. The parol agreement is to sell a particular designated place. If this were admitted, the agreement would go for nothing.

But in another point of view, after a contract has been carried into effect, and ruin would follow the rescission of it, as in a contract to pay for flooding land by a mill, and then denying the contract, and by assize of nuisance, pulling it down, courts will, unless there has been much fraud, leave it to be compensated in damages.

If there is no agreement you proceed by petition; if there is an agreement, you must sue on it, and this court has no jurisdiction, unless in a suit on the agreement. It then becomes a question, not only as to parol evidence to vary an agreement in a common suit, but one to set aside a contract and give jurisdiction, and in this case, as the agreement was made, you must sue on it, and recover for a violation of it, if you can. Here we have no jurisdiction to correct it. We have jurisdiction only where no agreement has been made.

In *Christ* v. *Diffenbach*, 1 *Serg. & Rawle*, 464, and some other cases, it would not have been heard that a tenant could have been sued as a trespasser, or for use and occupation, and unlimited damages given. Here, if the plaintiff has any claim, it is for a breach of the agreement. By his agreement he had taken his case out of this law. It is one thing to make the defendants pay for half the breadth of the canal, if that could be done; another to set aside the whole contract. *Collam* v. *Hocker*, 1 *Rawle*, 108.

This evidence puts an end to the paper; renders it useless, and makes an entirely different contract. As well might it be proved that a bond was not to be paid. The sale of land for a canal, seems to preclude all idea of a suit for damages done by it to the distillery, the mill, and in preventing access to the river. You admit an agreement, binding if they had lived up to it. Neither party contemplated choosing arbitrators, an appeal and trial in court for damages done by the canal.

(Bertsch *v.* The Lehigh Coal and Navigation Company.)

The plaintiff was nonsuited, and afterwards moved to take off the nonsuit:

1st. Because the court erred in permitting the question to be put to *Abel Abbot,* which was objected to by the counsel for the plaintiff as stated above.

2nd. Because the court erred in rejecting the evidence proposed to be given by the plaintiff, as contained in his first written offer.

3rd. Because the court erred in rejecting the evidence proposed to be given by the plaintiff, as contained in his second written offer.

The Circuit Court having refused to take off the nonsuit, the plaintiff appealed to the court in bank.

On the argument in this court, *Brooke,* for the appellant, abandoned the first of the reasons assigned for taking off the nonsuit.

In reference to the second, he observed, that at the time the plaintiff and the president of the *Lehigh* Coal and Navigation Company, Mr. *Fell,* were negociating, in reference to the land of the former, he was extremely unwilling to enter into the agreement in question. He was not disposed to take twenty-five dollars an acre, but Mr. *Fell,* who had been going along the line of the canal, making agreements with the owners of land, told him that the line was marked out, and that the company would put two locks on his land, which would have been a great advantage to him, as he contemplated keeping tavern. These representations and promises were the inducement to execute the agreement, but the stipulations of the defendants were not complied with, and consequently the plaintiff was not bound by the agreement. It was an executory contract, depending on certain conditions to be performed, and the parties had a right to alter the terms of it, or if one party departed from it, that party was bound to make compensation to the other. After the plaintiff had executed the agreement on the faith of the assurance of the president, that the canal would be made as it was then staked out, the company departed from the contemplated line, and this the judge who tried the cause would not permit the plaintiff to prove. The mode of proceeding which he adopted was the only remedy open to him to obtain compensation for the injuries he sustained. An action upon the agreement would have afforded no remedy, for he could recover upon it no more than twenty-five dollars an acre for the land, which would have been a very inadequate compensation. Indeed, no action could have been maintained at all. *Hopkins* v. *Mehaffy,* (11 *Serg. & Rawle,* 126,) proves that *Fell,* who was the agent of the company, could not have been made to respond in damages; and as no seal was affixed to the instrument, an action of covenant could not have been maintained against the company. Nor could the plaintiff have brought assumpsit, set forth the agreement, and then shown it had been departed from, for that would have been to make the agreement a nullity. Where there is fraud, moral or legal; where a party has been deceived, misled, or mistaken, and the contract is

(Bertsch v. The Lehigh Coal and Navigation Company.)

virtually destroyed, parol evidence is admissible to prove such facts. Here the agreement was rescinded in consequence of not having been complied with by the defendants, and the proceeding directed by the act of assembly was the only remedy the plaintiff had.    The replication was not in the nature of a plea of *non est factum ;* it averred that the plaintiff did not agree in the manner and form alleged by the defendants, and the object of the evidence was to establish this averment.

The third reason assigned for taking off the nonsuit was abandoned.

*J. M. Porter,* for the appellees.—The agreement having been pleaded, it was incumbent on the defendants to prove its execution only, and that the canal was constructed according to that agreement, for the act of 1818 gives no authority to institute such a proceeding as this, except where the parties have been unable to agree.    To show that the agreement was different from that which was excuted by the parties, parol evidence was clearly inadmissible.    It was not contended that there was any actual fraud.    The rule by which parol evidence is admissible to affect a written instrument is to be restricted, not enlarged.    *Iddings* v. *Iddings,* 7 *Serg. & Rawle,* 115.    Without enlarging it the evidence offered in this case could not have been received.    A written agreement cannot be contradicted, added to or diminished, by parol evidence.    *Thomson* v. *White,* 1 *Dallas,* 426.    Nor can an independent promise, made at the time of executing a written agreement be proved by parol.    *O'Harra* v. *Hall,* 4 *Dall.* 340.    *Heagy* v. *Umberger,* 10 *Serg. & Rawle,* 339.    A written instrument cannot be explained by parol evidence.    *M'Dermot* v. *United States Ins. Co.,* 3 *Serg. & Rawle,* 609.    Nor is such evidence admissible to vary its contents.    *Heilner* v. *Imbrie,* 6 *Serg. & Rawle,* 401.    It is admissible only to show fraud, mistake, or trust.    *Cozens* v. *Stevenson,* 5 *Serg. & Rawle,* 421.    *Collam* v. *Hocker,* 1 *Rawle,* 108.    Parol evidence of conversations previous or leading to a written agreement, cannot be received.    *Gilpin* v. *Consequa,* 1 *Peters,* 85–87.    *M'Kennan* v. *Doughman,* 1 *Penn. Rep.* 418.    Parol evidence cannot be given of a fact in relation to which there is a written agreement.    *M'Kinney* v. *Leacock,* 1 *Serg. & Rawle,* 27.    *Marshall* v. *Sprott, Addison,* 361.    Where however there has been a parol agreement to alter a water coure, it may be proved, provided the agreement has been carried into effect, but not otherwise. *Le Fevre* v. *Le Fevre,* 4 *Serg. & Rawle,* 241. A written agreement cannot be controlled, altered, or even explained by parol testimony, except where an ambiguity or uncertainty, arising from some extraneous circumstances, is to be removed. *Richards* v. *Kellam,* 10 *Mass. Rep.* 239.    *Paine* v. *M'Intire,* 1 *Mass. Rep.* 69.    *Reeves* v. *Leonard, Ib.* 91.    *Storer* v. *Freeman,* 6 *Mass.Rep.* 435.    *King* v. *King,* 7 *Mass. Rep.* 496.    *Albee* v. *Ward,* 8 *Mass. Rep.* 83.    *Lewis* v. *Gray,* 1 *Mass. Rep.* 297.    *Townsend* v. *Weld,* 8 *Mass. Rep.* 146.    *Watson* v. *Boylson,* 5 *Mass. Rep.* 411.    *Stackpole* v. *Arnold,* 11 *Mass. Rep.* 27.    *Hunt* v. *Adams,* 6 *Mass. Rep.* 519.    7 *Mass. Rep.* 518.    *Barker* v.

(Bertsch *v.* The Lehigh Coal and Navigation Company.)

*Prentiss,* 6 *Mass. Rep.* 430.   *Murray* v. *Hatch, Ib.* 477.   *Flint* v. *Sheldon,* 13 *Mass. Rep.* 443.   *Davenport* v. *Mason,* 15 *Mass. Rep.* 85.   *Eveleth* v. *Cronell, Ib.* 367.   *Hosey* v. *Newbold,* 7 *Pick.* 29. *Church* v. *Stelson,* 5 *Pick.* 506.   Declarations made at the time of executing a deed, cannot be given in evidence for the purpose of showing the intention of the parties, or their understanding of the legal effect of the instrument. *Wade* v. *Howard,* 6 *Pick.* 492.   A parol agreement respecting a right of way cannot be given in evidence to explain the deed conveying such right.   *Comeloch* v. *Vandusen,* 5 *Pick.* 163.   He also cited *Gay* v. *Wills,* 7 *Pick.* 217.   *Dix* v. *Otis,* 5 *Pick.* 38.   1 *Norris's Peake,* 168 to 194, and notes.   3 *Starkie on Evid.* 995 to 1028.   *Irvin* v. *Turnpike Company,* 2 *Penn Rep.* 466.

The opinion of the Court was delivered by

KENNEDY, J.—We think that the plaintiff ought to have been permitted to have given the evidence contained in his first offer, so far as it tended to prove that at the time the agreement was made and entered into between the plaintiff and the defendants, which the latter have pleaded as a bar to this proceeding of the former, the line or route of the canal was then laid out and designated by stakes set up through the plaintiff's land, and that the written agreement which has been set out by the defendants in their plea, was made in reference to that line, and that the land lying between it and the river is the same land that is described in the said agreement; and that the defendants instead of confining themselves to this line as there staked out, in constructing and making the canal, or at least keeping between it and the river, extended the canal beyond the line, and further from the river, into the other land of the plaintiff, and thus cut off a greater quantity of land from the main body of his farm than was agreed on, or embraced in the agreement set out by the defendants in their plea.   So far as the plaintiff offered to give evidence to this effect, we think it was admissible, because it cannot properly be considered testimony which would go to contradict, alter, add to, or detract from the written agreement between the parties; but tended to explain the same by giving locality and identity to the subject-matter and applying the contract to it, which is every day's practice. See 13 *Petersdorf's Abr.* 108, note.   As often as written agreements fail to describe by metes and bounds the lands contracted for, and to give a precise location to them, the omission is always supplied, and the application of the agreements made to the lands by the introduction of parol evidence, which has ever been considered competent; otherwise, in most cases the agreements could never be carried into effect.

The evidence which the plaintiff offered to give, to show that the defendants agreed to build two locks upon that part of the canal which passes through his land, as a part of the consideration he was to receive for parting with his land to the defendants, was of a different character, and went to establish a very different agreement be-

tween the parties from the one reduced to writing and set forth by the defendants in their plea.    This evidence we think was properly rejected by the court; for to have received it, would have been in direct violation of that rule so well established, that parol evidence is not admissible to contradict, alter, add to or diminish, a written instrument.

The other testimony offered by the plaintiff, and rejected by the court, was not admissible; some of it, because it did not fall within the provisions of the third section of the act to improve the navigation of the river *Lehigh,* which is the section under which this complaint was originated and must be sustained if at all.    It would rather seem to be within the terms of the fourth section of that act; and as to the residue of the evidence rejected, it appears to me that it was not admissible upon any ground of complaint.    If the plaintiff did sustain any such damage as he alleged for the introduction of it, I am inclined to think it was *damnum sine injuria.*

As this cause is to go back to the Circuit Court for a new trial, it is proper to notice the opinion which was delivered by that court in respect to the mode of proceeding in this case to which the plaintiff has resorted after having made an agreement with the defendants which they have set forth in their plea.    The judge in the Circuit Court was of opinion that this course of proceeding could only be adopted and pursued under the provisions of the act already referred to, where the parties could not agree upon a compensation.    In this we think his Honour was right.    But we also think that where an agreement has been made between the company and the owner of the land for compensation, as in this case, that if the company should afterwards, without regard to such agreement go on and make their canal through the land of the owner, on ground contrary to, and different from that which was agreed on, as is alleged was done here, the owner of the land would thereby be at liberty to rescind the agreement. Beside, it is quite obvious, if what he proposed to give evidence of, be true, that an action brought by him against the company for a breach of their covenant could not afford him adequate redress, because the land occupied by the canal and cut off from the main body of his farm, is not all included and bargained for in the agreement.

If, however, the plaintiff upon the next trial should fail to make sufficient proof to convince the jury that the company violated their agreement in departing from the ground agreed on for the line and course of the canal, he must fail entirely to recover anything in this proceeding.    He must then look to his agreement, and be content with the compensation provided for by the terms of it.    If it was fairly made, and has been observed and kept on the part of the company, the plaintiff is bound by every principle of honour, law and justice to abide by it on his part, whether it was a bad or a good bargain for him.

The judgment of nonsuit set aside, the cause reinstated, and remanded to the Circuit Court.