## Clarke *versus* Adams.

P. & M. agreed with A., the plaintiff, who was their partner, to buy out his interest in the firm, and to give him an obligation of indemnity against any unpaid debts of the firm. The agreement and the indemnity were separately reduced to writing and signed on the same day. At an earlier hour on the same day, at M.'s request, C., the defendant, without having seen the indemnity, signed a writing guaranteeing to A. the "faithful performance of the covenants and agreements of P. & M. in the foregoing agreement set forth." These three papers when delivered were separate, but were afterwards fastened together by the plaintiff. A. was afterwards obliged to pay an old debt of the firm and brought this action on the guaranty against C., alleging that it applied to the indemnity: *Held*, that evidence was admissible on behalf of C. as to what took place when the guaranty was signed, in order to show to what it referred.

January 18th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county:* Of July Term 1875, No. 110.

Covenant by Robert H. Adams against E. Bradford Clarke on an alleged guaranty of the covenants contained in an indemnity bond given to Adams in the dissolution of a partnership between Adams, Percival and Morrison. The pleas were "*non est factum*" and "*non infregit conventionem.*" The facts are sufficiently set forth in the opinion of the court. There was a verdict for the plaintiff; the defendant, after judgment thereon, took this writ of error, assigning for error the rejection of his testimony, as shown in the opinion of the court.

*W. J. Budd*, for the plaintiff in error.—There were two agreements made between Percival and Morrison and Adams; Clarke's guaranty was of the "covenants in the foregoing agreement set forth." Clarke should have been allowed to explain which agreement he referred to.

It was not a case of varying a writing by parol evidence.

*W. Ernst*, for the defendant in error.

Mr. Justice WOODWARD delivered the opinion of the court, February 5th 1877.

Robert H. Adams, the plaintiff below, A. F. Percival and R. A. Morrison were partners composing the firm of Percival, Morrison & Co. on the 27th of February 1872. As the result of previous negotiations, the firm was that day dissolved. A written agreement was executed by the partners, stipulating that the plaintiff should sell his interest in the business to Percival and Morrison for $10.500, for which they should pay in eight promissory notes, to be signed by them and endorsed by Joseph F. Tobias. The agreement contained a provision that a settlement under it should be made by the first of March, and provided also that Percival and Morrison should

"execute an obligation to Adams to save and keep him harmless from all claim, demand, suit or charge for or by reason of any debt due, or to grow due, in or out of the business." A bill of sale of his interest was made and delivered by the plaintiff to Percival and Morrison, and they executed the obligation of indemnity which the agreement required. With the other papers handed to the plaintiff was the instrument on which this suit was brought. It was executed under seal by E. Bradford Clarke, and was in these words: "For a valuable consideration to me in hand paid by Robert H. Adams, I do hereby guarantee the faithful performance of the covenants and agreements on the part of A. F. Percival and R. A. Morrison in the foregoing agreement set forth." All the papers were dated the 27th of February 1872, and were delivered respectively to the parties in the afternoon of that day. When the agreement, the obligation of indemnity and the guaranty were delivered, however, they were detached and separate instruments, and were fastened together afterwards by the plaintiff's counsel in his office. In 1873 a judgment was recovered against the plaintiff for the amount of a debt due by the former partnership, and having paid it, he brought this action on the guaranty of the defendant.

On the trial the defendant proposed to show "what took place at the execution by him of the guaranty, what it was he was to guarantee, and the conversation that took place between him and R. A. Morrison." While the precise facts it was sought to establish were not specifically set out, the purpose of the offer is indicated by the testimony contained in the bill of exceptions, and especially by the testimony of Mr. Johnson. The general allegation was that Morrison called on the defendant in the afternoon of the 26th or on the morning of the 27th of February, showed him the agreement for the sale of the plaintiff's interest in the firm, and requested him to sign the guaranty upon the assurance that it provided for nothing more than the performance by Percival and Morrison by the first day of March of the stipulations of the agreement. It was denied on his behalf that he had any knowledge of the existence of the obligation to indemnify the plaintiff, or that he undertook to bind himself to any duty which that obligation involved. The offer of the testimony was rejected, and the single inquiry here is, whether the ruling was accurate or erroneous.

That some foundation of fact existed for the theory of the defence was indicated by the letter of Mr. Johnson, written on the day when the transaction was closed, in which the defendant was told that Percival and Morrison had complied with the contract entered into with Adams, that the guaranty had been met and discharged, and that no further obligation rested upon him. So far as the circumstances of the case were disclosed, no imputation of bad faith can be made against either of these parties. It did not appear that the plaintiff had any knowledge of what occurred between

Morrison and the defendant when the guaranty was executed, and there is no reason to doubt that he supposed himself entitled to receive and hold it for his security.   But the mere act of signing the instrument bound the defendant to nothing except the duty which the exhibition of the contract of sale and the explanation of Morrison disclosed.   The stipulation for the obligation of indemnity did not contain a provision for a surety, and there was nothing on the face of the contract to show the possibility that the guaranty could be put to any ulterior use.   If the defendant became answerable for the stipulations of the obligation of indemnity, therefore, it must be on some ground of negligence or estoppel that could only be shown after his evidence had been heard.   He undertook to guaranty the faithful performance of the covenants in what was called "the foregoing agreement."   He had the right to show what that agreement was, for the fact of execution, standing alone, made him the guarantor of that and of nothing else.

There is no foundation for the objection that the admission of the testimony would have been to permit a parol contradiction of a written instrument.   The guaranty was signed while it was detached from all other papers.   It did not describe the "foregoing agreement" to which it referred.   By its own terms it was insensible, and to give it vitality and application required extrinsic proof. There is ample authority to warrant the reception of such evidence. In Aldridge v. Eshleman, 10 Wright 420, where an agreement had been made to become "responsible for merchandise bought," parol evidence was admitted to show that both past and future sales had been comprehended in the agreement.   In Wagner's Appeal, 7 Wright 102, parol evidence was allowed to determine a question of doubt as to who was a legatee, and to show that a name had been inserted by mistake.   In McCullough v. Wainright, 2 Harris 171, it was said that where a writing possesses an ambiguity arising from reference to extrinsic objects, it may be explained by parol testimony relative to the nature, situation and circumstances of those objects at the time of the contract.   The same rule was illustrated in Doe v. Burt, 1 Term Rep. 701; Bertsch v. The Lehigh Coal and Navigation Company, 4 Rawle 130, and Barnhart v. Riddle, 5 Casey 92.

Upon his theory of the case, the defendant became bound by the paper he signed just as he would have been bound if the paper had been attached to the agreement for the sale by the plaintiff to his partners.   All that he asked in the rejected offers was to prove the extent and limit of his original undertaking.   He was certainly entitled, in the first instance, to give this evidence.   Its eventual effect might possibly be controlled by considerations which it would be unwise now to anticipate.   Whether, with the facts fairly developed, there would be room for the application of the principle that where a loss must fall on one of two innocent parties, it must

[Clarke *v.* Adams.]

be borne by him whose act has caused it; and whether there was fault or negligence in the act of the defendant in signing the detached guaranty, or fault or negligence in the act of the plaintiff in accepting the three instruments in their detached form, are questions which this record does not raise.

Judgment reversed and *venire facias de novo* awarded.