## MERRIMAN'S EXECRS. v. BUSH ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF CENTRE
COUNTY.

Argued February 15, 1887—Decided May 9, 1887.

1. In an action of covenant the only breach that can be set up as a basis of recovery must be the breach of some covenant contained in the written instrument on which suit is brought.

2. In order to recover in covenant upon the breach of a parol provision, contemporaneous with the sealed instrument but of different effect, the plaintiff must not only have averred in the declaration that the parol provision was omitted from the writing by fraud or mistake, but he must establish the averment by such measure of proof as would justify a chancellor in decreeing a reformation of the contract.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STER-
RETT, GREEN and CLARK, JJ.

No. 305 January Term 1886, Sup. Ct.; court below, No. 199
April Term 1882, C. P.

This was an action of covenant in the court below, by Adeliza M. Merriman et al., executors of Hiram Merriman, deceased, against D. G. Bush, William F. Reynolds, Edmund Blanchard and John H. Orvis, who survive George M. Yocum.

The declaration averred:

Adaliza A. Merriman, . . . . . executors of the last will and testament of Hiram Merriman, deceased, the plaintiffs named in the above stated case by Samuel Linn, their attorney, complain of D. G. Bush, . . . . . who survive George M. Yocum, the defendants in the above action named, who were summoned to answer the said plaintiffs in an action of covenant; for that, whereas, heretofore, to wit, on the twelfth day of June, A. D. one thousand eight hundred and seventy-one, in the lifetime of said Hiram Merriman, at the county aforesaid, a certain agreement in writing was then and there made between D. G. Bush . . . . . of the first part, and Hiram Merriman, of the second part, a true copy of which is here set forth:

Article of agreement made and concluded this twelfth day of June, in the year of our Lord one thousand eight hundred and seventy-one, by and between D. G. Bush, . . . . . ., all of the Borough of Bellefonte of the first part; and Hiram Merriman of the second part, as follows, to wit: The said parties of the first part for the consideration hereinafter mentioned, hereby sell and convey unto the said party of the second part all the white pine, yellow pine, white oak and hemlock timber, being standing and growing upon the following tracts of land situated on the waters of Beech Creek in the townships of Snow Shoe and Burnside, in Centre county, to wit: The one surveyed as containing 433 acres and 163 perches on the 21st day of August, 1794, in pursuance of a warrant granted to Robert Waters, dated the 29th day of April, 1793; another . . . . . ; another . . . . . ; another . . . . . ; another surveyed the 13th day of August, 1794, as containing 433 acres and 163 perches on a warrant of the 29th day of April, 1793, granted to John Rugg; another . . . . . ; another . . . . . ; another . . . . . ; another . . . . . ; another . . . . . , and the other . . . . . The said party of the second part to have and enjoy the full and complete right to enter upon any and all of the said twelve tracts of land and cut down and remove all of the said several kinds of timber . . . . . The said timber all to be cut and taken off the lands within the following limit of time and not afterwards, to wit: . . . . . .

And if any of the timber hereby sold and conveyed shall remain on any of the said tracts after the time specified for taking the same off each tract, the said timber shall revert to and remain the property of the said party of the first part as fully and completely as if no sale had ever been made.

In consideration whereof the said party of the second part agrees to pay to the said parties of the first part the just and full sum of twenty-five thousand dollars, in manner following, to wit: . . . . . And the said party of the second part agrees to deliver up and surrender to the parties of the first part each tract of land as soon as the timber shall be taken therefrom, although prior to the expiration of the time limited for taking off said timber. And the parties of the first part shall have the right at all times to enter upon any of said lands to search or mine for coal or other minerals, but not so as to interfere with the lumbering operations of the party of the second part.

And whereas it is alleged that a strip across the western side of the Robert Waters tract is interfered with by older surveys, and by the estate of Rufus Dwinell, it is hereby agreed that in case the said parties of the second part shall be prevented by the owner or owners of such older titles from cutting or taking away the timber growing upon the said western part of the Robert Waters tract, then and in that case, the said parties of the first part shall refund to the said parties of the second part the value of said timber at three dollars per thousand feet stumpage, in any case however not exceeding the sum of fifteen hundred dollars, one eighth of which shall be payable by said W. F. Reynolds. Said parties of the first part hereby covenant and agree with said party of the second part that they are the legal and equitable owners of the twelve tracts of land above described. That in case said party of the second part shall be interfered with in the possession or operation upon any or all of said tracts by ejectment or other legal process not procured to be instituted by himself or his agents, that he shall have in addition to the time hereinbefore specified, as much time to remove said timber on each of said several tracts as has been consumed in such litigation. . . . . .

In witness whereof . . . . .

[Signed and sealed in the presence of A. O. Furst. A supplementary agreement dated April 24, 1872, extended the time for the removal of the timber, and is omitted. The narr. proceeded :]

And although the said Hiram Merriman, plaintiffs' testator, during his lifetime, fully performed the covenants on his part in the agreement, and paid to the said defendants the full consideration agreed to be paid, for said timber, to wit : the sum of twenty-five thousand dollars in manner provided in said agreement, yet the said plaintiffs say that the said defendants have not performed the said covenants in said agreement contained on their part, for that they say that, during the negotiations for the purchase of the timber specified in said agreement, and before the aforesaid contract was sealed and delivered to the said Hiram Merriman, the said defendants, by their agent duly authorized so to do, went upon the ground with, and pointed out to the agent of the above named Hiram Merriman, plaintiffs' testator, the lines, boundaries, corners and

location of the above mentioned two tracts of land in the names of John Rugg and Robert Waters, being two of the twelve tracts embraced in the said agreement upon which the timber was agreed to be sold to the plaintiffs' testator. That upon the faith of the representations aforesaid of the defendants' agent, Hiram Merriman, the plaintiffs' testator, executed and delivered the aforesaid contract, and fully performed and fulfilled the covenants therein contained on his part.

That upon the faith of the representations of the defendants as aforesaid as to the location of the said lands, and relying upon the covenants of the defendants above set forth, the said Hiram Merriman, the plaintiffs' testator, entered upon and proceeded to cut the timber, so as aforesaid purchased by him from the said defendants standing and growing upon, *inter alia,* the following two of the above mentioned twelve tracts of land, to wit: upon the tract in the warrantee name of Robert Waters, and the tract in the warrantee name of John Rugg, in said agreement mentioned within the boundaries pointed out and designated by the agent of the said defendants, and to remove the same.

That whilst the said Hiram Merriman was proceeding, as aforesaid, to cut and remove the timber from the said last mentioned two tracts of land, a certain action of ejectment was brought in the Common Pleas of Centre county by . . . . . ; of the bringing of which said action the defendants were duly notified by the said Hiram Merriman and H. A. Merriman; that the case was put at issue and tried at April term, 1881, in said court, and a verdict was therein recovered . . . . . , which land so recovered in said ejectment embraced the timber pointed out to and purchased by Hiram Merriman from the defendants as growing and standing upon the Robert Waters tract named in said agreement. And the plaintiffs further aver that by reason of the recovery in the last mentioned action of ejectment, they, the said plaintiffs, were compelled to pay to the said . . . . . , the value of the timber by the said Hiram Merriman cut upon said lands so recovered upon and up to the time of the bringing of the said action, together with the costs of the said action, which said value of said timber with the costs amounted to the sum of twelve hundred and thirty-six and 33–100 dollars ($1,236.33), which said sum was paid on the 10th day of December, 1881.

And that a certain action of ejectment was brought in the Court of Common Pleas of Centre county by . . . . . , of the bringing of which action the defendants were duly notified by the said Hiram Merriman; that the said case was put at issue and tried at January term, 1879, in said court and verdict recovered . . . . . , which land so recovered in said ejectment embraced the timber pointed out to and purchased by Hiram Merriman from defendants as growing and standing upon the Rugg tract named in said agreement, and said defendants have been obliged to pay the costs recovered against them by the said . . . . . and pay the value of the timber cut and removed by the said defendants before the bringing of the said action of ejectment, which said costs, together with the value of the timber so paid, amounted in the aggregate to the sum of two thousand fifty and 90–100 dollars ($2,050.90) the same having been paid to said Long on the 12th day of April, 1880.

And the plaintiffs further aver that by reason of the recovery had in the said two actions of ejectment above stated, they have been deprived of a large quantity of timber of the kind and description mentioned in said agreement which was standing and growing upon the tract in the name of Robert Waters, and the tract in the name of John Rugg, within the lines of said tracts respectively, as pointed out and designated by the defendants aforesaid, which said timber so standing upon said tracts, and which the plaintiffs were prevented from cutting and taking away as aforesaid, was of great value, to wit: of the value of fifteen thousand dollars.

And so the plaintiffs say and aver that the said defendants were not at the time of the making of said agreement, the legal and equitable owners of the said two tracts of land in the names of John Rugg and Robert Waters (as the same were designated and pointed out upon the ground to the said Hiram Merriman), and by reason thereof have failed to keep and perform their covenant with the said Hiram Merriman, to the effect that they were, at the time of making said agreement, the legal and equitable owners of the said twelve tracts of land in said agreement mentioned.

Therefore the plaintiffs say that they have damage, etc.

Under the plea of covenants performed *absque hoc* the case

came on for trial, when the plaintiff, having proved the contract set out in the declaration, made the following offer:

Plaintiffs offer to prove that at, and for some days before the making and execution of the written agreement between Hiram Merriman and D. G. Bush, and others, already in evidence, the parties to said agreement were in negotiation about the sale and purchase of the timber specified in said agreement, and alleged by the vendors to be standing and growing on the tracts named in said agreement; that the price to be paid for said timber had been agreed upon, to wit: twenty-five thousand dollars; that the location of the several tracts named in said agreement, being unsettled and unknown to the vendee, H. A. Merriman, acting for H. Merriman in the negotiations, required that a guaranty of the location of the lands should be expressed in the agreement; that when the parties had arrived at this point in the negotiations, they differed as to this requirement of guaranty, and the vendors declined to give a written covenant of guaranty of location. The parties separated, Mr. Merriman being advised by his counsel to decline the purchase without such guaranty, and he did so decline. After the negotiations were so broken off, they were on the same day renewed and resumed, and Mr. Merriman was advised by his counsel that if the vendors would agree to express in the contract a covenant that they were the legal and equitable owners of the lands described in the agreement upon which the timber was alleged to be standing and growing, and would point out, or cause to be pointed out and defined, upon the ground the boundaries of the said lands embracing the timber being sold and purchased, he could with safety enter into the agreement. This suggestion was communicated to the vendors and was accepted by them, and the proposed covenant of title was inserted in the agreement which was being prepared in the words following: "Said parties of the first part hereby covenant and agree that they are the legal and equitable owners of the twelve tracts of land above described."

In accordance with this proposition, the agreement was completed and signed by the parties. The promissory notes and a check of the purchaser covering the entire amount of the purchase money, to wit: $25,000, were at the same time executed by Mr. Merriman. All this was done under the express

Statement of Facts.

understanding of the parties that the agreement, the notes and the check, should not be delivered to the parties, but should be deposited in escrow with John P. Harris, cashier of the First National Bank of Bellefonte, to be held by him in escrow until the boundaries of said land, embracing the timber sold by the agreement, should be pointed out by the vendors to the vendee, and the timber so pointed out should prove satisfactory to the purchaser, in which event the agreement was to be delivered to Mr. Merriman, and the notes and check were to be delivered to the vendors by the said John P. Harris; the agreement, notes and check were accordingly deposited with John P. Harris in escrow; that in pursuance of said agreement certain persons, namely, William P. Mitchell, H. P. Treziyulny, Samuel Marsh and H. A. Merriman, within a few days after said papers were so deposited, went from Bellefonte, and certain lines and boundaries were shown to said H. A. Merriman, by said William P. Mitchell, the said Mitchell acting on behalf of the said vendors, as the boundaries of the tracts named in said agreement, and the timber growing within said lines was pointed out as the timber intended to be sold in and by said agreement. That upon the return of the said persons to Bellefonte to wit: the parties who had been sent to examine and define the boundaries of said lands, they reported to the respective parties to the agreement what lines and timber had been pointed out to the vendee, and the said Merriman, believing he had been shown the true boundaries of the tracts named in the contracts, and that the timber growing within said lines was the property of the vendors, and relying upon the designation of the same by the authority of the vendors as aforesaid, as being correct and reliable, he, the said Merriman, consented that the written agreement and the notes and check aforesaid should be delivered to the parties, and they were accordingly so delivered; that the said check and several notes were promptly paid at maturity. This to be followed by proof that the vendors in said agreement were not, at the time the said agreement was made, the legal and equitable owners of the lands pointed out to the vendee as aforesaid, nor of the timber standing and growing thereon, which timber was specially exhibited to the vendee and was purchased by him from said vendors; that after the making and delivery

of said agreement, the said vendee proceeded to cut and remove timber from the tracts of land so pointed out, to wit: that part thereof embraced within the lines of the John Rugg survey as pointed out as aforesaid, and during the winter of 1875-1876, did cut and remove a large number of pine logs therefrom; that to No. 81, January Term, 1876, an action of ejectment was brought in the Common Pleas of Centre county by a certain J. Z. Long against Hiram Merriman, D. H. Merriman and H. A. Merriman for the same land upon which they were cutting timber as aforesaid, and a writ of estrepement was issued in the same case against the defendants therein, restraining them from cutting timber; that said ejectment was proceeded with and a trial had thereon in said court, which resulted in a verdict for the plaintiff for so much of the land pointed out to the said vendee as was embraced within the lines of a warrant and survey in the name of Jacob Z. Long; in consequence of which recovery the vendee was obliged to pay to said Long, by way of damages, a large sum of money for the timber cut and removed from the land so recovered, said timber being of great value; and in addition thereto the defendants in said suit were compelled to pay the costs thereof. The amount paid for damages and costs in said suit, plaintiffs. propose to show by competent proof.

And at another time subsequent to the making of the said agreement said vendee and those authorized and employed by him on or about . . . . . entered upon land shown and pointed out by the vendors as being embraced within the boundaries of the survey in the name of Robert Waters and proceeded to cut, and remove therefrom a large amount of timber then and there growing and being on the said land, being the timber which vendors showed to the vendee as standing within the lines of the Robert Waters tract, and which was purchased by Hiram Merriman on the faith of the said designation of boundary, and that he the said Merriman, by his agents and employees, cut and. removed a large quantity of logs from the said land; that whilst the said Merriman was proceeding to cut the said timber, a certain action of ejectment was brought in the Common Pleas of Centre county by P. B. Crider, Samuel Christ and F. W. Crider against Hiram Merriman and H. A. Merriman for tracts in the name of D.

H. H. Cunningham, Francis West and John West, of the bringing of which said action the said vendors were duly notified by the said Hiram Merriman and H. A. Merriman; that the said case was put at issue and tried at the April Term, 1881, and a verdict was therein recovered by the plaintiffs for the land described in the writ up to the line running north from white pine stump of the Patrick Moore as represented by a draft attached to the verdict of the jury, and returned therewith, which land so recovered, embraced part of the timber pointed out to, and purchased by Hiram Merriman as growing and standing on the Robert Waters tract. That by reason of the recovery in the last mentioned ejectment, the said Merriman was compelled to pay to the said P. B. Crider, Samuel Christ and F. W. Crider a large sum of money by way of damages together with the costs of said action, the amount whereof will be shown by the records of the court; that a large quantity of timber remained standing upon the territory recovered in the suits brought by J. Z. Long, and by Crider and others, which by the recovery had in said suits, has been lost to the plaintiff.

That a large quantity of timber remained still standing and growing upon the territory pointed out as embraced in the tracts in the names of John Rugg and Robert Waters, lying outside of what was recovered in the ejectment brought by Jacob Z. Long and by P. B. Crider, Samuel Christ and F. W. Crider, which by reason of the determinations of the location of the tracts in the said suits respectively has been lost to the said Merriman. This for the purpose of giving locality and identity to the tracts in the names of John Rugg and Robert Waters, named in said agreement, as pointed out by the defendants, and of applying the said written contract, and the covenants contained therein, thereto.

The offer was objected to, whereupon the court, Hon. J. W. Simonton, P. J., holding special term, ruled as follows:

The objection to the offer of evidence must be sustained and the evidence excluded. The covenant contained in the writing is, "That said parties of the first part hereby covenant and agree that they are the legal and equitable owners of the twelve tracts of land above described." The offer proposes to show that before this agreement was delivered, and after it

was executed the parties went upon the ground and certain lines were pointed out to locate one or two of these tracts.

There is no offer to show any agreement that the lines as so located should be covenanted to be the proper lines of either of these tracts; and if it were so offered to show, it would be adding a parol contract to the written contract. The action is upon the covenant, and is therefore in affirmance of the agreement, and for this reason the only breach that can be set up to warrant a recovery is a breach of some covenant contained in the writing. That the offer is based upon the theory that a recovery can be had for the breach of some covenant, not contained in the writing, is shown by the fact that the pleader in the declaration does not aver a breach of the covenant as contained in the writing simply, but a breach of this covenant as modified and enlarged by parol evidence. While we dislike very much to put parties out of court without trying the merits of their case, we are compelled to hold that this parol evidence cannot be received, because the effect of recovery under it would be to modify and enlarge the covenant contained in the writing. To which plaintiffs' counsel except and ask a bill sealed, and a bill is accordingly sealed for the plaintiffs.

The jury then under the direction of the court returned a verdict for the defendants, whereupon, judgment having been entered, the plaintiffs took this writ, assigning for error (1) the overruling of the foregoing offer and (2) the direction to the jury to find for the defendants.

*Mr. Samuel Linn* (with whom were *Mr. S. R. Peale, Mr. C. T. Alexander* and *Mr. J. L. Spangler*), for plaintiffs in error:

1. The covenant bound the defendants to make good their allegation that they were the " owners, legal and equitable," of the lands mentioned in the agreement; it covered the John Rugg tract, for instance, wherever it might be. Where is it? The defendants allege that it is where the official location may fix it, and that their covenant binds them no further than the lines to be ascertained by official designation. But the offer proposes to prove that the location of these lands was unascertained and in confusion, that that subject was discussed during the negotiations between the parties, and that, whilst

the defendants were unwilling to give any written guaranty of location, they did agree that, before the papers should be delivered, the lines and boundaries should be pointed out by them upon the ground to H. A. Merriman, the son and agent of the purchaser, which was accordingly done and the papers delivered in pursuance of this agreement.

Could this arrangement be proved by parol evidence? The purpose of the offer was no more than to identify the land covered by the agreement, and that parol evidence may be offered for the purpose of identifying the subject matter of the contract has been several times decided : Barnhart v. Riddle, 29 Penn. St. 92; Bertsch v. Lehigh Nav. Co., 4 R. 129 ; Aldridge v. Eshleman, 46 Penn. St. 420; Clarke v. Adams, 83 Idem 309; Morris' App., 88 Idem 382; Martin v. Berens, 67 Idem 459 ; Walker v. France, 112 Idem 203.

2. We contend, moreover, that the defendants were estopped from denying that the John Rugg tract, for instance, was located where they pointed it out to be, during the negotiations and before the contract was delivered. The territory pointed out in advance of the delivery of the paper, was, as between the parties to this case, the John Rugg tract; and it cannot be denied by the parties that that is the tract mentioned in the agreement.

3. It is urged that under the ruling in Vicary v. Moore, 2 W. 451, which was, that where a specialty is altered or enlarged by parol, the whole contract becomes parol, the action should have been assumpsit and not covenant. But, in pointing out the lines of the tracts, the covenant is not changed in any way. This was done before the agreement was delivered and became effectual. We allege a breach of that written contract, and not a breach of a contract changed or enlarged by parol. The doctrine of Vicary v. Moore is thoroughly considered in McManus v. Cassidy, 66 Penn. St. 260, and see Lawall v. Rader, 24 Idem 285. Lehigh Coal Co. v. Harlan, 27 Penn. St. 429, is within the principle of Vicary v. Moore, where the agreement was changed *after* it had been executed and delivered.

*Mr. R. M. Speer* (*Mr. Adam Hoy* and *Mr. John G. Love* with him), for the defendants in error :

1. In an action of covenant on a specialty the party is con-

Opinion of the Court.

fined to the written covenants upon which he brings suit and is not permitted to prove by parol evidence an agreement different from that on which he declares: Barndollar v. Tate, 1 S. & R. 160; Lyon v. Miller, 24 Penn. St. 392; Vicary v. Moore, 2 W. 451; Carrier v. Dilworth, 59 Penn. St. 406. There is an exception to this rule, where fraud or mistake is alleged and the agreement sought to be reformed, but the fraud or mistake must be specifically averred: Hunter v. McHose, 100 Penn. St. 38; Thorne v. Warfflein, Idem 519.

2. And an action of covenant cannot be maintained upon a sealed agreement modified by parol: Vicary v. Moore, *supra;* Carrier v. Dilworth, *supra.* Here, the breach assigned is larger than the covenant and therefore bad: Clark v. McAnulty, 3 S. & R. 364. Covenant does not lie against one who has not sealed the deed: Maule v. Weaver, 7 Penn. St. 329, and as it is strictly an action at law, if plaintiff in pleading bring down his pleadings to parol to suit his evidence, he defeats his action: Lehigh Coal & Nav. Co. v. Harlan, 27 Idem 429.

3. The doctrine of estoppel does not apply. The defendants are here simply to deny that they are bound in covenant to support any location of tracts the plaintiff may see proper to establish or seek to establish by parol, independent and outside of the terms of the written agreement.

The cases, Barnhart v. Riddle, 29 Penn. St. 92.; Bertsch v. Lehigh Coal & Nav. Co., 4 R. 130; Aldridge v. Eshleman, 46 Idem 420; Clark v. Adams, 83 Penn. St. 309; Morris's App., 88 Idem 368; Martin v. Berens, 67 Idem 460; (reviewed) do not sustain the plaintiff's contention.

OPINION, MR. JUSTICE CLARK:

The contract upon which this suit was brought is in writing and under seal; it is not pretended that anything was omitted from it, either through fraud or mistake, which the parties or either of them intended to have in it; the agreement is admittedly in all respects just what it was meant to be. The action is covenant, and is therefore in affirmance of the contract.

The plaintiff, having offered the contract in evidence, proposed to prove by parol that, although the defendants absolutely refused to guarantee the location of the land, and nego-

tiations were broken off until this requirement was dispensed with, the lines of the respective tracts had been by the defendants pointed out to them on the ground, and the contract had been entered into, relying upon the designation of the lines so made ; that the agreement, and also the notes and checks for the purchase money, had been deposited in escrow, to be delivered when the lines were so pointed out, and that the contract was not to take effect and did not take effect until·this was done.  It is conceded that the Waters and the Rugg tracts, and the only contention arises out of these, have been regularly located by actual survey on the ground ; but the offer was to prove that they are not located upon the ground designated, and that in consequence of the superior title of adverse claimants, the plaintiffs were prevented from taking the timber which was pointed out to them and which they supposed they were buying.

This offer was objected to on the ground substantially, that the action being covenant and in affirmance of the contract, it was not proper to receive evidence in enlargement of the instrument upon which the suit was brought ; that the action is necessarily founded upon the covenant as sealed by the parties ; and, as there is nothing on the face of the agreement that is ambiguous or requiring explanation, and nothing was omitted, either through artifice or accident, the covenants contained in the contract cannot be affected by parol proofs.

The plaintiffs' contention, however, is that there is nothing in the offer to contradict, vary or enlarge the terms of the agreement ; that if the parties went upon the ground and pointed out the lines, saying : " This is the John Rugg, and this the Robert Waters," the covenant will cover lands thus designated ; that the evidence offered was mere identification of the subject matter of the contract, that and no more.

It is plain that the only breach that can be set up as a basis of recovery, must be the breach of some covenant contained in· the written contract.   Referring to the writing, we find a covenant of title in the following form : " Said parties of the first part hereby covenant and agree that they are the legal and equitable owners of the twelve tracts of land above described." It is upon an alleged breach of this covenant that the plaintiffs base their claim in this case ; but they contend that the cov-

enant, as written, must be applied to the John Rugg and to
the Robert Waters tracts, where they were shown to be,
according to the understanding of the parties at the time, irre-
spective of their actual location on the ground ; and that the
covenant is broken if it be made to appear that the territory
pointed out on the ground as the Rugg and the Waters tracts,
was not owned by the defendants.

In the pleadings, therefore, the plaintiffs aver as a breach of
the covenant, not that the defendants, at the time of the mak-
ing of said agreement, were not the legal and equitable own-
ers of the lands as described in the contract; but that they
were not the legal and equitable owners of the lands, " as the
same were designated and pointed out upon the ground," etc.;
which lands are admittedly other and distinct from those
described in the contract.

The argument of counsel in support of these propositions is
certainly plausible and has been most ingeniously presented ;
but we think it is more specious than sound.   It seems very
clear that by the exact terms of the agreement, the specific
lands which were purchased by the plaintiffs, were the twelve
tracts described in the written agreement by the warrantee
names ; it is as clear that this description covered the territory
embraced within the lines of the official surveys upon which
the warrants were located, no more and no less.   Now, if by
the offer it is intended to show by parol, notwithstanding the
exact and the plain provisions of the contract, that the lands
described therein were not the specific lands purchased at all,
but that the contract was intended to embrace other and
wholly different lands which were pointed out at the time, the
effect would certainly be, by parol evidence to change the
terms of the writing upon which both parties are to be pre-
sumed to have relied.   The contract, as it is written, however,
is conceded to contain all that the parties or either of them
contemplated it should contain ; the offer discloses no matter
which if established would justify a chancellor in entering a
decree for reformation of the contract.

It is stated in the offer that the true location of these two
tracts was not known, at all events was uncertain ; that the
defendants absolutely refused to guarantee any specific loca-
tion for them ; that they agreed, however, " to express in the

contract a covenant that they were the legal and equitable owners of the lands described in the agreement, and would point out, or cause to be pointed out and defined, upon the ground, the boundaries," etc. But, assuming that the facts set forth in the offer were established by proof, it seems plain that in pointing out the boundaries, the defendants did not assume, expressly or by implication, to become liable for the correctness of the lines they should point out, as they absolutely refused to become liable for any location; the only liability for title which they agreed to assume they did assume, and it is written in the body of the contract, in the clause which we have quoted above, which clause it is conceded was inserted pursuant to the parol understanding alleged. No agreement is expressed, and certainly none can arise by implication under the facts alleged, that the defendants were the legal owners of the lands which were pointed out; they agreed that they were the owners of the lands "above described," that is, according to the description and designation of the written contract. If there was any parol cotemporaneous understanding to a different effect, the plaintiffs, in order to recover in covenant, must not only have averred in the declaration that the parol provision was omitted from the writing by fraud or mistake, but they must establish that averment by such measure of proof as would justify a chancellor in decreeing a reformation of the contract; then, as in equity, that may be considered done which ought to have been done, covenant may be sustained upon the instrument reformed : Hunter v. McHose, 100 Penn. St. 38. No such averments are made in the declaration and no such proofs were offered.

It is true that parol evidence may in some cases be received, to give locality and identity to the subject matter, and to apply the contract to that subject matter: Bertsch v. Lehigh Coal Co., 4 Rawle 130; Morris' Appeal, 88 Penn. St. 368. But in this case, it is manifest from the offer that whilst the defendants were to point out the boundary, they were only to covenant for the title to the lands described in the contract; that was all the guarantee they would agree to give; all that was finally required, and all that was given. The subject matter of the contract was the land, which the defendants owned and were about to sell, described and designated by

the names of the respective warrantees, and the covenant of title was so expressed.

Nor can we see how under such circumstances any question of estoppel could be supposed to arise. Under our construction of the offer, the lines were pointed out, but with the understanding by parol that the defendants were to be bound for the location and title according to the clause which was inserted in their contract. The only object of pointing out the lines probably was, that the purchasers might know where the defendants believed the lines to be, and as there is no suggestion of fraud or artifice, or any offer to show that the defendants acted otherwise than in the utmost good faith, we cannot see why they should be estopped from saying that the Rugg and the Waters tracts, under the covenant, are just where they are actually found on the ground. The timber on the Rugg and the Waters tracts, wherever those tracts are located, undoubtedly belongs to the plaintiffs. The defendants can have no just or legal claim to it; even if they found it to their interest they could not compel the plaintiffs to yield it up and take the lands pointed out. The plaintiffs, however, although invested with the title to the timber on these tracts, according to their true location, have not in any way relinquished their right, nor do they offer to do so ; on the contrary, whilst they hold the title to the timber on one location of the lands, they seek to recover the value of the timber on the other.

The plaintiffs were not without remedy perhaps in other forms of action, but we cannot see how they can have redress for their alleged wrongs in an action of covenant.

Upon a careful examination of the whole case, we find no error which would justify the reversal of this judgment.

The judgment is affirmed.

Mr. Chief Justice Mercur dissents.