## CARL M. VAIL v. H. P. WEAVER.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY.

| | |
|---|---|
| 132 | 363 |
| 160 | 308 |
| 132 | 363 |
| 29 SC | 226 |
| 132 | 363 |
| 223 | 397 |
| 37 SC | 253 |

Argued February 6, 1890—Decided February 17, 1890.

The engine, machinery and appliances of an electric light plant do not pass with the real estate upon which it is operated, to the purchaser of the realty at a sale under a mortgage judgment, unless it was the intention to make the plant a part of the realty when it was erected. Mere physical annexation is no longer the test: Hill v. Sewald, 53 Pa. 271 ; Seeger v. Pettit, 77 Pa. 437 ; Morris's App., 88 Pa. 368.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 101 January Term 1890, Sup. Ct.; court below, No. 35 March Term 1887, C. P.

On January 4, 1887, Carl M. Vail brought replevin against John Mundell and H. P. Weaver, for an engine, dynamo and appliances, constituting an electric light plant. Defendant Mundell pleaded non detinet and H. P. Weaver pleaded property.

Statement of Facts.

At the trial on March 18, 1889, the plaintiff showed title to the property as the purchaser of it, as an employee and agent of Westinghouse, Church, Kerr & Co., at an execution sale under a judgment in favor of said company against the Pennsylvania Tack Works. Defendant Weaver claimed title to the property in dispute under a prior sale of the real estate, upon which the plant was operated, made upon a judgment had upon a mortgage of the premises recorded before the plant was introduced.

It was made to appear from the testimony, that the tack-works company owned the premises upon which their business was conducted, and also a building used as an opera house separated from the former by a street. This opera house was leased to C. P. Weaver, the treasurer of the company. The tack-works company, whose premises were subject to the mortgage, purchased the plant from the Westinghouse company, and it was set up in the iron-house and wire-nail department of the tack factory. The building was of brick and was connected with the main factory building by a corridor or room twelve or fifteen feet wide wherein were kept the grindstones used for the works. The tack-works company erected a board partition to inclose and protect the electric machinery from other portions of the building, making a room 12 by 30 feet; and to support the engine, the company erected a foundation wall, five or six feet in depth, below the floor, six feet square at the bottom, two feet at the bottom filled in with stone and mortar, and four feet of brick. Six iron bolts were walled in the masonry. The brick wall was raised eighteen inches above the floor, and upon this the upright engine of 35 horse-power was bolted and secured as firmly and permanently as such engines are usually fastened. To support the dynamo, which was of 200 candle power, joists were laid upon the ground of the room partitioned off, a floor of two-inch plank laid down, and a square frame made of eight pieces of timber placed thereon. This frame was nailed to the flooring and cleated fast by boards or planks nailed to the floor against its four sides. The dynamo rested upon this frame, and was made firm by its own weight, 3,000 lbs., and by bolts through the timbers. It was connected with the engine by belts. The indicator was screwed or fastened to the end of the building. The wires passed out through holes bored through the brick

Charge of Court below.

wall above the window frames. The other appliances were connected in the usual way. The steam for the engine was supplied from the boilers that supplied power to the tack machines. The number of electric lights supplied to the tack factory was disputed. Plaintiffs alleged there were but four, two in the room where the electric machinery was, and two in the grindstone room, before spoken of. Defendant's witnesses testified to twenty additional lights in various parts of the factory. In and around the opera house there were about 225 lights.

At the close of the testimony, the court, WEAND, J., charged the jury, in part, as follows :

It can make no difference that these articles were placed upon the premises after the mortgage was given. The law is, that as a mortgagee may suffer by the depreciation of the property arising from the fluctuations in value, from accident or from negligence, so he may have the benefit of its appreciation, whether the same arises from proper cultivation and improvement of the property, or from other causes. You will, therefore, see that the question that you are trying is simply as to whether this was personalty or realty. No matter what the law formerly may have been, mere physical attachment with the realty is no longer a criterion of annexation. The intention to annex, whether rightfully or wrongfully, is the legal criterion.

The rule governing the test, as applicable to cases of this kind, has been so well laid down by the Chief Justice of the Supreme Court of Massachusetts, that I propose to read his words to you, as defining the law upon the subject, and I ask your careful consideration of this law, because you will have to apply it to the facts of the case, and unless you understand it, you cannot render an intelligent verdict : " It is impossible to lay down any precise test by which to determine whether machinery, or other articles attached to or used in a building, become a part of the realty. It depends upon the relations of the parties, the character of the articles, their adaptation to, and the manner in which they are attached to, or used in the building, and generally upon the circumstances of each case as indicating the intention of the parties. In the case of machinery, or other articles which are not obviously an integral part of the realty, the question is, whether all the facts of the case lead to

the presumption or inference that the owner, in placing them in the building, intended them as a permanent improvement of or addition to the realty.   If this is the fair presumption or inference, then a grantee or mortgagee would have the right to consider them as constituting a part of the realty, and they would pass to him by his deed."

Now, it is stated as a rule, supported by the weight of authority, that where the article is actually annexed to the land, it will be presumed to have been so attached with a view to the permanent improvement or beneficial enjoyment of the freehold, and will be deemed a part of the realty, unless the circumstances are such as to show that it was intended all along to continue a chattel.   And, although physical annexation exists and is an important, and often, as bearing upon the question of intention, a controlling element in determining the question whether an article is or is not a fixture, yet it appears that the established doctrine is that the true criterion of a removable fixture consists in the united application of several tests.

First: Real or constructive annexation of the article in question to the realty.   And that is the first question, therefore, that you will consider.   Was there here a real or constructive annexation of any part of this machinery to the realty?   Now, as bearing upon that question, you will recall the testimony of Mr. Smith for the plaintiff, of Mr. Davis and of Mr. Weaver for the defendant, and they all unite in stating that this engine was placed upon a foundation of stone or brick, at least six feet of a foundation; and that it was properly fastened in the manner that such engines usually are fastened.   Now, was or was not that an attachment or annexation to the realty?   If that is the usual and ordinary manner in which engines of this character are attached to the land, then you will be justified in finding, as the first step in the case, that here was a real annexation of this machinery to the realty.   And as this dynamo was a part of this engine, and to be used with it, it would not be necessary in order to consider that as an annexation that it should be placed upon the same kind of a foundation; it would only be necessary that it should be attached to the real estate in the manner which is usual and ordinary in cases of this kind. And if the placing of this flooring, these planks or joists, in the manner in which this dynamo was attached to them, was the

proper and effectual method of so attaching that dynamo, it would in law be considered an annexation, the same as the engine when placed upon the foundation.

But this alone is not sufficient for the plaintiff's case. We now come to the second test; and that is, appropriation or adaptation to the use or purpose of that part of the realty with which it is connected. Was this machinery appropriated for any purpose connected with these tack-works, or with the opera house, so far as the owners are concerned? Was it used or intended for that purpose? In considering this question, there are two views to be taken of it: First, was it appropriated in any manner for the use of the tack-works, and you will see afterwards where the application of this point comes in.

With reference to this part of the case, you will recall the testimony of Mr. Weaver, who testifies that this tack-works building was actually lighted by the use of this dynamo; that a certain number of lights were placed in various parts of the building, and used by the workmen in the course of their business. If that testimony is to be believed, then this machine was appropriated for the use and purposes of lighting the tack-works property. You will also recall the testimony of Mr. Samuel S. Smith, a witness for the defendant, whose evidence may throw some light upon the subject. As opposed to this, you have the testimony of Mr. Smith, the witness for the plaintiff, and from his testimony you would be warranted in believing that it never was appropriated for that purpose, because it was never intended or adapted for that purpose, and he gives his reasons therefor. And he states that when the proposition was made to place this machinery on the tack-works property, it was expressly stated to him by Charles P. Weaver, with whom he made the contract, that the tack-works were in a combination which forbids them running at night, and that therefore it was not necessary to use the lights in that building in the course of their business. You will recall his testimony with reference to the power of the engine, and as to its capacity to run both the machinery in the tack-works, and to run this dynamo; and, weighing the testimony of all these witnesses you will pass upon the question as to whether this machinery was appropriated or adapted for the uses of the tack-works property. Then you pass to the opera house, and you will consider the question

Charge of Court below.

as to whether it was appropriated or adapted merely for the purpose of lighting the opera house. Here again, you will recall the testimony of Mr. Smith for the plaintiff, who states that thàt was the main purpose in putting in this plant; that all the calculations were made upon the basis of a certain number of lights to be used in the opera house and that the cost and expense were gotten at because of these estimates. He explains to you why it was that a certain number of lights were used in the tack-works property at the request of Captain Weaver, but that this did not conflict with the original idea that they were to be only used in the opera house.

Having passed upon this question of appropriation or adaptation, you go to the third, which is the most important; and that is, the intention of the party making the annexation, to make the articles a permanent acquisition to the freehold; this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, and the policy of the law in relation thereto, the construction and mode of the annexation and the purpose and use for which the annexation has been made.

[What was the intention of the tack-works when they put in this plant? Here again, you will recall the testimony of Mr. Smith for the plaintiff, who seems to have made this contract and have been aware of all its features from the beginning. Considering the character of the engine used in the tack-works, can you from the fact infer that the tack-works company intended to use this machinery with reference to the tack-works business? Then again, you will recall the fact that Captain Weaver was the lessee for ninety-nine years of the opera house, the rent already having been fixed. From any part of this testimony can you infer, or does there a reasonable presumption or inference arise, that, with that condition of affairs, the tack-works would place this plant upon their property with the intention of making a permanent improvement, if the sole purpose was merely to light the opera house? If you find that there was no intention of using this plant in the tack-works, or that it was not appropriated or adapted for that purpose, you will see at once the importance of this inquiry as to why the tack-works would introduce this as a permanent improvement, when it was only for the purpose of benefit to the opera house.] [3]

Charge of Court below.

Now then, Captain Weaver appears to have acted all along for the Pennsylvania tack-works, and it has been claimed here that what he did cannot bind them. But the jury must remember that what he said and did led up to the completion of this contract and caused this improvement to be made, and I charge you as a matter of law, that when this company, by its resolution, approved what he did, they were bound by any declarations or statements which he made in the course of the negotiations which led to the completion of the contract, and, therefore, all that he said or did in relation to the matter is to be taken into consideration by the jury when they come to pass upon these various questions. . . . .

Having stated the law to you in this brief manner, [I leave it to you to find as a matter of fact whether the intention of these parties was, at the time they put in this plant, to make this a permanent improvement for the use and benefit of the tack-works property. If they did, it became part of the realty, and the verdict must be for the defendant, Harry P. Weaver. If they did not, if it was to be put as a temporary improvement there, liable to be taken out at any time, or removed with no idea of attaching it to the realty or freehold, then it became personal property, and your verdict must be in behalf of the plaintiff. In passing upon this question, however, you must take into consideration the fact that it is not every article that is attached to the freehold that becomes part of the realty. Nor is it every article of machinery that is brought upon the premises that becomes part of the freehold. Articles of trade, certain articles of ornamentation, articles brought there for temporary use, can be removed at the pleasure of the owner; and therefore, if you should find that the tack-works placed this plant there, having in view the idea that they could at any time remove it, and adopt the old system of lighting, or any new system of lighting, either of their own or any other corporation then existing in the borough of Norristown, or that might hereafter exist here, it would go far to show that they did not intend this to be a permanent arrangement.] [2]

The defendants request the court to charge the jury [inter alia]:

1. That under the undisputed evidence, the verdict must be in favor of John Mundell, one of the defendants.

Answer: This is affirmed. . . . .

11. That under all the evidence, the verdict must be for the defendants.

Answer: This is refused. This will be a question for the jury to decide under the facts of the case.[1]

The jury returned a verdict in favor of the plaintiff as against H. P. Weaver, and in favor of the defendant John Mundell. A rule for a new trial having been discharged, judgment was entered, when the defendant Weaver took this appeal, assigning for error:

1. The answer to defendant's point.[1]

2, 3. The portions of the charge embraced in [ ][2][3]

*Mr. Montgomery Evans* (with him *Mr. Louis M. Childs*), for the appellant.

Counsel cited: Hill v. Sewald, 53 Pa. 271; Seeger v. Pettit, 77 Pa. 437; Voorhis v. Freeman, 2 W. & S. 119; Pyle v. Pennock, 2 W. & S. 390; 8 Am. & Eng. Encyc. of Law, 50.

*Mr. Henry C. Boyer* (with him *Mr. Samuel D. Huey*), for the appellee.

Counsel cited: Hill v. Sewald, 53 Pa. 272; Seeger v. Pettit, 77 Pa. 437; Morris's App., 88 Pa. 368.

PER CURIAM:

The principal question in this case was, whether the machinery and fixtures of the electric plant, which were placed in the tack-works, were placed there permanently or not. If they were temporary fixtures, placed there for a temporary purpose, their sale under the writ of fieri facias passed a good title. Mere physical annexation is no longer the rule. It is a question of intention. The intention to annex, whether rightfully or wrongfully, is the legal criterion: Hill v. Sewald, 53 Pa. 271; Seeger v. Pettit, 77 Pa. 437; Morris's App., 88 Pa. 368. This question was submitted to the jury by the learned court below under adequate instructions, and their verdict ends the case.

Judgment affirmed.