In re SHELAR.

District Court, W. D. Pennsylvania. March 16, 1927.

No. 13031.

1. **Fixtures** ⟷35(2)—**Evidence held to show tenant erecting wooden silo was to have right of removal as against landlord.**

Evidence *held* to show that it was understood between landlord and tenant that the tenant erecting a wooden silo on the leased premises was to have right of removal.

2. **Bankruptcy** ⟷140(½)—**Tenant's trustee has same rights as tenant to fixtures installed on leased premises.**

A tenant's trustee in bankruptcy has the same rights to fixtures installed on leased premises as the tenant, whether they may be removed being a question of the intention of the tenant and his landlord, as determined by the particular circumstances of the case.

3. **Fixtures** ⟷14—**Whether fixtures on leased premises are removable is question of intention of landlord and tenant.**

Where a tenant has erected fixtures on leased premises, whether they are removable must be determined by the intention of the tenant and his landlord.

4. **Fixtures** ⟷15—**Removability of trade fixtures is determined by consideration of physical annexation, adaption to realty, nature of fixtures, legal policy, situation of parties and purpose of making annexation.**

In determining whether trade fixtures are removable, the tests are the physical annexation as bearing on the question of intention, the appropriation or adaptation to the use of the realty with which it is connected, the nature of the article affixed, the relation and situation of the parties, the policy of law in relation to the particular fixture, the structure and mode of annexation, and the purpose for which it has been made.

5. **Fixtures** ⟷1—**Generally, all fixtures of permanent character pass with the realty.**

The general rule, subject to certain recognized exceptions, is that all annexations of a permanent character pass with the realty.

6. **Fixtures** ⟷14—**Rules of law concerning fixtures between landlord and tenant are much relaxed.**

The rules of law with respect to fixtures as between landlord and tenant are not held with

the same firmness as between vendor and vendee, or mortgagor and mortgagee.

**7. Fixtures ☞15, 16, 17—Tenant may generally remove "trade fixtures," "agricultural fixtures," and "domestic fixtures."**

As between landlord and tenant, a tenant may generally remove "trade fixtures," necessary to carrying on a trade, "agricultural fixtures," annexed for purpose of farming, and "domestic fixtures," attached to a dwelling house for convenience and comfort.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Domestic Fixtures; Trade Fixtures.]

In Bankruptcy. In the matter of John Alvin Shelar, bankrupt, concerning the right of removal of a silo erected by the bankrupt on leased premises. Decision of referee, holding that it might be removed, affirmed.

Harvey E. Martin, of New Castle, Pa., for trustee.

Wylie McCaslin, of New Castle, Pa., for landlord.

THOMSON, District Judge. This case, which comes before the court on review from the decision of the referee, involves the question of ownership and right of removal of a silo erected by the tenant on leased premises, prior to his adjudication as a bankrupt.

The bankrupt, Shelar, was a tenant farmer, engaged in the dairy business on lands owned by J. R. and L. T. Justice; the tenancy being created under a written lease, the term extending from February 1, 1926, to March 31, 1927. The silo, a wooden structure, was ordered by the tenant in the spring of 1926, and was erected in the following September. It was set on a cement foundation, not attached thereto in any way, and was held in place by guy wires extending from the top. The structure was purchased by the tenant, and after the order was placed the landlord notified the vendor, a Mr. Boyd, that he, the landlord, was not interested in the wooden silo, and told Boyd not to look to him for payment. This appears from the following testimony:

"Q. Did you have any conversation, or call up Mr. Boyd, from whom they purchased this silo, in reference to it? A. Yes, sir.

"Why did you do that, Mr. Justice? A. I was interested in a brick silo. The silo's dimension was 14 feet in diameter and 40 feet high and wooden. I was not interested in that kind. I told Mr. Boyd I was not interested in a frame silo.

"Q. Anything else you said to him? A. Not to look to me for the payment.

"Q. Did you have any conversation with

him after that time about the erection of the silo? A. Not that I remember of.

"Q. Then you knew that Alvin Shelar had ordered it? A. Yes, sir.

"Q. And that Mr. Boyd was to look to him for the payment? A. I knew he had ordered it.

"Q. And you told Mr. Boyd he was not to look to you for the payment? A. Yes, sir."

While the landlord bore the expense of putting in the concrete foundation, it is clear from the evidence that he was only interested in the erection of a brick silo, and did not claim title to, or ownership in, the wooden structure erected thereon by the tenant. It seems reasonably clear that the parties intended, at the time the silo was built, that the tenant should have the right to sell or remove it at the termination of his lease. This appears from the following testimony (evidence of J. R. Justice):

"Q. What arrangement, if any, did you have with Mr. Shelar concerning the silo? A. Well, Mr. Shelar spoke to me about getting a silo, and at one time I said, if he would buy a brick silo, it might be possible we could help him. I had an occasion to go away for some time, and when I came back he had bought a silo. Then afterwards he came to me and said, 'How would it be if you make the foundation for this silo?' I did not give him any direct answer, or didn't really care to do it. So he and his uncle started to dig the foundation, working a couple of days. He spoke to me again. I told him possibly I would build a foundation in a short time, 2 or 3 years. I said to him that he would want to take the silo away, and for that reason did not want to build the foundation. Last time he spoke to me, he said he thought he could, all right, if he had the silo. In case I would sell out or lease to somebody else, he could sell it to them, or try to. So, under the terms, I went on and furnished the foundation for him. * * *

"Q. You say there was no arrangement or agreement between you and Mr. Shelar in reference to removing the silo in case he found he couldn't keep the farm? A. No, sir.

"Q. Any conversation about that? A. No more than I reported.

"Q. That, if he left the property, he could sell it to another tenant? A. Yes, sir. * * *

"Q. Mr. Justice, would you be willing to pay any reasonable amount for that silo, and allow it to remain, provided we could get a release from the creditors? A. It does not suit me. I am not strong on a silo.

Testimony of Mr. Alvin Shelar, the tenant:

"Q. After you had ordered the silo from Mr. Boyd, state whether or not you had any conversation with Mr. Justice in reference to that silo? A. When Mr. Justice came back from the West, I told him I had ordered a wooden silo.

"Q. Anything further said? A. No. Mr. Justice told me that kind of silo didn't suit him, which I already knew."

Following this, the witness states that he erected the silo to feed his cattle; he being in the dairy business and owning 21 cows.

"Q. Before you erected the silo, was anything said between you and Mr. Justice in reference to removal of that silo at the end of the lease? A. Nothing, except there was some talk about a brick silo; that I told him that the wooden one would be removed and it could be sold to any future tenant. * * *

"Q. Mr. Shelar, was there any agreement between you and Mr. Justice as to whether that should be a permanent part of the realty? A. There was not. * * *

"Q. Did you have any conversation with Mr. Justice in reference to the payment of the silo? A. Nothing, except that he would not be responsible. I told him I dealt with the Shelar boys since they were in knee pants and never lost a dollar."

[1] While the lease is silent on the question of removal, the right of the tenant must be determined from all the facts and circumstances of the case. It seems apparent that the tenant would not have erected the structure at the cost of, perhaps, $500 or $600, when his term expired in a few months, if he had no right of sale or removal. From the facts of the case, the purchase of the structure by the tenant, the notification by the landlord that he would not be responsible for its payment, the admissions in his testimony, and the probabilities of the case all go to establish title in the tenant, and the intention of the party at the time the silo was erected that the right of removal shall exist. [2] Principles of law applicable here are plain; it has been held that "fixtures installed on leased premises do pass, or do not pass, to the trustee of the tenant under the same rules as would be applicable as between the landlord and the tenant, the matter being one of intent of the parties, as determined by the particular circumstances of the case. [3, 4] Mere attachment to real estate is no longer the criterion; the parties here are in agreement that it is not necessary that there should be a specific contract with reference to the right of removal of a trade fixture, and that the question must be determined by the intention of the parties. In the case of Vail v. Weaver, 132 Pa. 363, 19 A. 138, 19 Am. St. Rep. 598, the lower court laid down three tests for the determination of this question; his opinion being affirmed by the Supreme Court. The tests were:

(1) Physical annexation as bearing upon the question of intention.

(2) Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected.

(3) The intention of the party making the annexation, to be inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the policy of the law in relation thereto, the structure and mode of annexation, and the purpose and use for which the annexation has been made.

[5, 6] It is true the general rule is that all annexations of a permanent character pass with the realty; but the rules of law with respect to fixtures between landlord and tenant are much relaxed, and are not held with the same firmness as between vendor and vendee, or mortgagor and mortgagee.

[7] Between the landlord and tenant there are three well-recognized exceptions to the general rule relative to the removal of fixtures:

(a) Trade fixtures, articles necessary to the carrying on of a trade.

(b) Agricultural fixtures, annexed for purpose of tilling the soil.

(c) Domestic fixtures, attached to dwelling house, for purpose of convenience or comfort.

These may be removed by the tenant. Seeger v. Pettit, 77 Pa. 437, 18 Am. Rep. 452. In Jackson & Gross, Landlord and Tenant, § 65, p. 58, the general rule is stated that all domestic and agricultural fixtures may be removed by the tenant which have been affixed by him solely for personal use or comfort. This doctrine is supported by an abundance of authority.

I think the learned referee, in deciding in favor of the trustee, reached the correct conclusion, and his opinion and order are therefore affirmed.